UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS,   Case No. 10-10759

Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

Plaintiff,

v.   Adv. No. 12-01295

ILAH JONES, WILLIAM CAMPBELL, individually,
WILLIAM CAMPBELL, as Personal Representative of the ESTATE
OF LINDA CAMPBELL, JOHN DOE as Personal representative of
the ESTATE OF LINDA CAMPBELL, and DAVID JONES.

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment ("Motion for Summary Judgment" or "Defendants' Motion"). *See* Docket No. 24. Plaintiff Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors ("Trustee"), filed a response in opposition to the Motion for Summary Judgment ("Trustee's Response"). *See* Docket No. 28. This adversary proceeding is one of many adversary proceedings initiated by the Trustee seeking to recover payments made by Vaughan Company Realtors ("VCR") to parties who invested in VCR's promissory note program. The Trustee asserts that VCR operated as a Ponzi scheme. She seeks to recover certain transfers made to the Defendants under several theories, including avoidance of transfers under the actual fraud and constructive fraud provisions of 11 U.S.C. § 548 and applicable state law.

After consideration of the Motion for Summary Judgment, the responses thereto, and the supporting papers, and being otherwise sufficiently informed, the Court finds that the Motion for Summary Judgment should be granted.

SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Rule 56, Fed.R.Civ.P., will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment must set forth by number all material facts the movant contends are not subject to genuine dispute, and refer with particularity to the portions in the record upon which the movant relies. NM LBR 7056-1(b). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)).

"[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986). Furthermore, New Mexico Local Bankruptcy Rule 7056–1(c) provides that the party opposing summary judgment

must: 1) list the material facts as to which the party contends a genuine fact exists; 2) "refer with particularity to those portions of the record upon which the opposing party relies;" and 3) "state the number of the movant's fact that is disputed." NM LBR 7056-1(c). Properly supported material facts set forth in the movant's motion are "deemed admitted unless specifically controverted" by the party opposing summary judgment. NM LBR 7056-1(c).

## COUNTS CONTAINED IN THE COMPLAINT

The Complaint contains 150 numbered paragraphs and consists of 20 separate counts. Paragraphs 1 through 61 include allegations regarding the nature of the proceeding, jurisdiction and venue, the alleged transfers, and the fraudulent Ponzi scheme allegedly perpetrated by Douglas Vaughan and his company, VCR. Paragraphs 62 through 150 incorporate paragraphs 1 through 61 by reference and set forth each claim as a separate count. The counts are:

| | |
|---|---|
| Count 1 | Actual Fraud under 11 U.S.C. § 548(a)(1)(A) based on alleged transfers to Ilah Jones made within two years of the date of the filing of the VCR bankruptcy case |
| Count 2 | Actual Fraud under 11 U.S.C. § 548(a)(1)(A) based on alleged transfers to Linda Campbell, William Campbell, individually, William Campbell, as personal representative of the estate of Linda Campbell, and John Doe, as personal representative of the estate of Linda Campbell, (the "Campbells") made within two years of the date of the filing of the VCR bankruptcy case |
| Count 3 | Actual Fraud under 11 U.S.C. § 548(a)(1)(A) based on alleged transfers to David Jones made within two years of the date of the filing of the VCR bankruptcy case |
| Count 4 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to Ilah Jones made within two years of the date of the filing of the VCR bankruptcy case |
| Count 5 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to the Campbells made within two years of the date of the filing of the VCR bankruptcy case |

| | |
|---|---|
| Count 6 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to David Jones made within two years of the date of the filing of the VCR bankruptcy case |
| Count 7 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to Ilah Jones made within four years of the date of the filing of the VCR bankruptcy case |
| Count 8 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to the Campbells made within four years of the date of the filing of the VCR bankruptcy case |
| Count 9 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to David Jones made within four years of the date of the filing of the VCR bankruptcy case |
| Count 10 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to Ilah Jones made within four years of the date of the filing of the VCR bankruptcy case |
| Count 11 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to the Campbells made within four years of the date of the filing of the VCR bankruptcy case |
| Count 12 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to David Jones made within four years of the date of the filing of the VCR bankruptcy case |
| Count 13 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) and/or 11 U.S.C. § 544 as to Ilah Jones |
| Count 14 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) and/or 11 U.S.C. § 544 as to the Campbells |
| Count 15 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) and/or 11 U.S.C. § 544 as to David Jones |
| Count 16 | Fraudulent transfer (past creditors) under state law, N.M.S.A. §56-10-19(B) and/or 11 U.S.C. § 544 as to Ilah Jones |
| Count 17 | Fraudulent transfer (past creditors) under state law, N.M.S.A. §56-10-19(B) and/or 11 U.S.C. § 544 as to the Campbells |

Count 18   Fraudulent transfer (past creditors) under state law, N.M.S.A. §56-10-19(B) and/or 11 U.S.C. § 544 as to David Jones

Count 19   Undiscovered fraudulent transfers based on state law

Count 20   Disallowance of the Defendants' Claims under 11 U.S.C. § 502(d), or, alternatively, Equitable Subordination of her Claims under 11 U.S.C. § 510(c)

FACTS NOT SUBJECT TO GENUINE DISPUTE

1.   VCR operated its business as a Ponzi scheme. *See* Defendants' Motion, ¶ 1; Trustee's Response, p. 3. Douglas Vaughan and VCR concealed the ongoing fraud from current and prospective investors of VCR. *Id.* At all relevant times, VCR was insolvent. *Id.*

2.   Norma Jones, the mother of several Defendants, began investing in VCR's note program in 1998. *See* Trustee's Response, p. 6; Reply in Support of Defendants' Motion for Summary Judgment (Docket No. 34) ("Defendants' Reply"), p. 4. VCR executed a three year compounding promissory note in favor of Norma, whereby accruing interest was added to the principal balance and the total amount of principal and accrued interest would be paid at the end of the term of the note. *Id.*

3.   Upon maturity of Norma's note, she reinvested the principal and accrued interest. *Id.* At various times thereafter, she invested additional funds in VCR's promissory note program. *Id.*

4.   Between 1998 and 2003, Norma invested a total of $96,002.64 into VCR's promissory note program. *See* Defendants' Motion, ¶ 2; Trustee's Response, p. 3.

5.   Norma died on June 6, 2004. *See* Defendants' Motion, ¶ 6; Trustee's Response, p. 4.

6.   Norma executed a Last Will and Testament ("the Will") on May 23, 2001. *See* Will (Docket No. 24-2).

7. The Will appointed Ilah Jones as the Personal Representative of the Norma Jones Estate. *Id.* After Norma's death, Ilah served in that capacity. *See* Defendants' Motion, ¶ 9; Trustee's Response, p. 5; Affidavit of Ilah Jones (Docket No. 24-2) ("Jones Affidavit"), p. 1. The Will provided that all of Norma's real and personal property be distributed in equal shares to her three children, Ilah, David, and Linda. *See* Will, p. 2.

8. Norma's estate was submitted for informal probate in the Second Judicial District Court of Bernalillo County for the State of New Mexico as case number PB-2004-00395 (the "Probate Proceeding"). *See* Defendants' Motion, ¶ 6; Trustee's Response, p. 4.

9. On July 2, 2004, Ilah Jones filed a Notice to Creditors in the Probate Proceeding. *See* Trustee's Response, p. 6; Defendants' Reply, p. 4. The notice was published in the Albuquerque Journal on July 12, 2004 and July 19, 2004. *Id.*

10. By June 2006, the total principal and interest due to Norma on account of her investment in VCR was $133,101.46. *See* Defendants' Motion, ¶ 3; Trustee's Response, 3.

11. On June 9, 2006, VCR made three equal payments of $44,367.16 to Ilah, Linda, and David on account of Norma's investment in VCR. Defendants' Motion, ¶¶ 4, 10; Trustee's Response, p. 4-5. Ilah, as personal representative of the Norma Jones Estate, directed VCR to make such payments. *See* Defendants' Motion, ¶¶4, 9; Jones Affidavit, ¶ 6.

12. David did not invest in VCR's note program. *See* Defendants' Motion, ¶ 11; Trustee's Response, p. 5. His interaction with VCR was limited to receiving payments on account of his mother's investment in VCR. *Id.*

13. Ilah filed a Verified Statement of Personal Representative (the "Verified Statement") on November 29, 2006. *See* Defendants' Motion; Verified Statement attached to

Defendants' Motion (Docket No. 24-3). The Verified Statement was the last document filed in the Probate Proceeding. *See* Probate Proceeding Docket Sheet (Docket No. 34-1).

14. VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010 (the "Petition Date"). *See* Defendants' Motion, ¶ 5; Trustee's Response, p. 4.

## DISCUSSION

The Trustee seeks to recover transfers made by VCR to the Defendants under 11 U.S.C. §§ 544 and 548 and N.M.S.A. 1978 §§ 56-10-18 and 19. Ilah and Linda received payments from VCR on account of their own investments in the promissory note program and on account of their inheritance from Norma. David only received such payments on account of his inheritance from Norma.

In their Motion for Summary Judgment, the Defendants seek dismissal of any claims under 11 U.S.C. § 544 and N.M.S.A. §§ 56-10-18 and 19 to recover proceeds they received on account of Norma's investment in VCR's promissory note program. The transfers from VCR to Norma's devisees on account of her investment occurred in June 9, 2006, and the bankruptcy case was filed on February 22, 2010. All of the Trustee's claims arising from Norma's investment in VCR's promissory note program are therefore based on state law because the relevant transfers were made more than two years prior to the commencement of the bankruptcy case.[1] As the Trustee's claims against David all arise from Norma's investment in VCR's promissory note program, the Trustee consents to the dismissal of her claims for actual and

---

[1] Section 544 permits the trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable [state] law." 11 U.S.C. § 544(b)(1). Unlike Section 548, which has a two-year look back period, Section 544 - in conjunction with the New Mexico Fraudulent Transfer Act - allows a trustee to void certain transfers that occurred within four years before the petition date. *See* N.M.S.A. 1978 § 56-10-23 (establishing a four year statute of limitations on pursuing fraudulent transfer actions under New Mexico law).

-7-

constructive fraud against David based on 11 U.S.C. §§ 548(a)(1)(A) and (B).[2]  The Court will therefore dismiss Counts 3 and 6.

*Whether the Trustee's claims arising from Norma's investments in VCR are time-barred by application of the New Mexico Uniform Probate Code*

The Defendants seek judgment in their favor on the grounds that the Trustee's claims arising from Norma's investments in VCR are time-barred under New Mexico's version of the Uniform Probate Code ("UPC"), N.M.S.A.1978 § 45-1-101 et seq. (Repl. Pamp. 2008).  To the extent the Trustee's fraudulent transfer claims are based on state law, they are subject to the limitations periods found in New Mexico's probate statutes.  *See In re Dry Wall Supply, Inc.,* 111 B.R. 933, 936 (D.Colo.1990) ("'Since the trustee, under section 544(b), will often be compelled to stand on the rights of a single qualified creditor, it is to be expected that questions of estoppel and the effect of the running of statutes of limitations will arise…. [I]f the creditor ... is barred from recovery because of the running of a statute of limitations prior to the commencement of the case, the trustee is likewise rendered impotent.'") (quoting 4 Collier on Bankruptcy § 544.03[2] at 544-21 to 22 (L. King. 15th ed. 1989)).[3]  If the state law limitations period expired before the commencement of the bankruptcy case, the trustee's fraudulent transfer claims brought under applicable state law are time-barred.[4]  *Id.*

---

[2] Section 548(a)(1) permits the trustee to "avoid any transfer … that was made or incurred on or within 2 years before the date of filing the petition."  There are no allegations that David received any transfers on or after February 22, 2008.

[3] *See also In re Simpson,* 334 B.R. 298, 304 (Bankr.D.Mass.2005) (noting that when a trustee is asserting claims under state law, state law dictates the statute of limitations applicable to the claim).

[4] If the state law statute of limitations period expires after the commencement of the bankruptcy case, the Trustee's state law claims are limited by 11 U.S.C. § 546(a), which includes state law claims the trustee may assert pursuant to 11 U.S.C. § 544(b).  *See* 11 U.S.C. § 546(a) (which applies to "[a]n action or proceeding under section 544 ...").  Section 544(b) provides, in relevant part, that "the trustee may avoid a transfer of an interest of the debtor in property ... that is voidable under applicable state law....". 11 U.S.C. § 544(b)(1).

The UPC contains several limitations periods, also known as nonclaim provisions, which govern the presentation of claims against a decedent's estate and/or any subsequent distributees. The parties have identified three potentially relevant nonclaim provisions in the UPC: (1) Section 45-3-803(A), which governs claims against the estate arising before the decedent's death; (2) Section 45-3-803(C), which governs claims against the estate arising after the decedent's death; and (3) Section 45-3-1006, which governs claims against distributees. The Court will address each section below.[5]

A. *Section 45-3-803(A): Claims Against the Estate Arising Before Death*

Section 45-3-803(A) "bar[s] claims against a decedent's estate or the personal representative of the estate that arise *before the death of the decedent* unless such claims are filed within one year after the decedent's death." *Pruett*, 477 B.R. at 213 (emphasis added).[6] That section provides:

> All claims against a decedent's estate that arose before the death of the decedent, including claims of the state and any subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated or founded on contract, tort, or other legal basis, if not barred earlier by another statute of limitations or non-claims statute, are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented within the earlier of the following:
>
> (1) one year after the decedent's death; or
>
> (2) the time provided by Subsection A of Subsection B of Section 45-3-801 NMSA 1978 for all creditors barred by publication.

N.M.S.A.1978 § 45-3-803(A).

---

[5] The Court previously addressed Section 45-3-803 in the context of the Trustee's state law fraudulent transfer claims in *Wagner v. Pruett (In re Vaughan Company Realtors)*, 477 B.R. 206 (Bankr.D.N.M. 2012). In *Pruett*, however, the Court never reached the issue of whether the Trustee's claims were barred because it was unclear when the transfers took place and to whom they were made. While *Pruett* is instructive with respect to Section 45-3-803, it is not dispositive of the issues or facts in the present case.

[6] *See also See Macias v. Jaramillo,* 129 N.M. 578, 583, 11 P.3d 153, 158 (Ct.App.2000) (stating that "[u]nder Section 45–3–803(A)(1), a tort claim against a decedent's estate that arose before the death of the decedent is barred against the estate or the personal representative 'unless presented within ... one year after the decedent's death.'") (quoting the statute).

-9-

It is undisputed that upon maturity of Norma's note, she reinvested the principal and accrued interest into VCR's promissory note program. The first transfer by VCR in connection with Norma's note occurred on June 9, 2006, roughly two years <u>after</u> Norma's death. Section 45-3-803(A) is therefore inapplicable.

  *B. Section 45-3-803(C): Claims Against the Estate Arising After Death*

Section 45-3-803(C) bars certain "claims against a decedent's estate that *arise at or after the death of the decedent*." N.M.S.A.1978 § 45-3-803(C) (emphasis added). If Section 45-3-803(C) is applicable, the trustee must assert her state law cause of action within four months after the claim arises. *See Pruett*, 477 B.R. at 215. That section provides:

> All claims against a decedent's estate that arise at or after the death of the decedent, including claims of the state and any subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated or founded on contract, tort or other legal basis are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as follows:
>
>   (1) a claim based on a contract with the personal representative within four months after performance by the personal representative is due; or
>
>   (2) any other claim within the later of four months after it arises or the time specified in Paragraph (1) of this subsection.[7]

.M.S.A.1978 § 45-3-803(C).

Norma died on June 6, 2004. VCR made the first and only transfer to Ilah, Linda, and David on account of Norma's investment in VCR on June 9, 2006. The Trustee's state law fraudulent transfer claims arose on that date. *See Williams v. Infra Commerc Anstalt,* 131 F.Supp.2d 451, 457 (S.D.N.Y. 2001) (A claim for fraudulent transfer "arises at the time the …

---

[7] Subsection (1) is inapplicable. The Trustee does not assert any claims based on a contract with Ilah as Personal Representative of the estate.

-10-

conveyance occurs.").[8]  If Section 45-8-803(C) is applicable, the limitations period would have expired on October 9, 2006, and the Trustee's state law claims would be barred.

The Trustee contends that her claims are not barred under Section 45-3-803 for a variety of reasons.  First, she argues that the proceeds of the promissory note were improperly probated because she did not receive adequate notice of the Probate Proceeding.  Pursuant to N.M.S.A.1978 § 45-3-801(A), the personal representative is required to "give written notice … to any known creditor and to any creditor who is reasonably ascertainable by the personal representative within three months after the personal representative's appointment."  The personal representative may satisfy the notice requirements by "publish[ing] a notice to creditors once a week for two successive weeks in a newspaper of general circulation." N.M.S.A.1978 § 45-3-801(B).  *See generally Garcia v. Underwriters at Lloyd's London,* 141 N.M. 421, 427, 156 P.3d 712, 719 (Ct.App. 2007) (discussing notice requirements under the UPC).  Here, Ilah, as Personal Representative, filed a Notice to Creditors in the Probate Proceeding less than one month after Norma's death.  Such notice was published in the Albuquerque Journal on July 12, 2004 and July 19, 2004.  There is no evidence that the notice was deficient or that Ilah otherwise failed to comply with Section 45-3-801.  The Court is therefore not persuaded that the Trustee's state law claims survived as a result of Ilah's alleged failure to properly notify creditors.

Next, the Trustee argues that, because the promissory note passed to Norma's heirs by operation of law on the date of her death, the estate never took possession of the proceeds. Consequently, the Trustee asserts that her claims are against the Defendants individually rather than against the probate estate.

---

[8] *See also In re Inflight Newspapers, Inc.,* 423 B.R. 6, 22 (Bankr.E.D.N.Y. 2010) (noting that "[c]onstructive fraud claims … arise at the time the alleged fraudulent conveyance is made).

-11-

The Trustee is correct that "title to a decedent's property, both real and personal, passes immediately upon death to … the devisees under his [or her] will." 1 *Uniform Probate Code Practice Manual*, p. 394 (2nd ed. 1977).[9] However, such devolution does not bestow upon the devisee the absolute rights of a fee simple owner. Instead, the personal representative may exercise possession and control over a decedent's property in the course of administering the estate. Section 45-3-709 provides, in relevant part:

> Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration.

N.M.S.A. 1978 § 45-3-709. A personal representative may sell or otherwise dispose of the estate property as part of his or her administrative duties, in which case the devisees are deemed never to have taken title. *See* N.M.S.A. 1978 § 45-3-711 ("A personal representative has the same power over the title to property of the estate that an absolute owner would have, subject only to his trust to use and apply the property for the benefit of creditors and others interested in the estate.").[10]

---

[9] *See also* N.M.S.A. 1978 § 45-3-101 ("Upon the death of a person, the person's … property … devolves: (1) to the persons to whom the property is devised by the person's last will."); *Kerr v. Porvenir Corp.,* 119 N.M. 262, 266, 889 P.2d 870, 874 ("Property disposed of by will passes directly to the beneficiary under the will. It does not pass to the administrator and then to the beneficiary.") (internal citations omitted).

[10] *See also Bender v. Bender,* 292 Conn. 696, 975 A.2d 636 (Conn. 2009) (noting that while a devisee may immediately receive legal title to the decedent's property, an executor is entitled to strip the devisee of such title by exercising his or her power to sell the property); *Ruzicka v. Ruzicka,* 262 Neb. 824, 635 N.W.2d 528 (Neb. 2001) ("Title to real property passes immediately upon death to devisees or heirs, *subject to administration*.") (emphasis added); *Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581 (Tex. 1993) ("Although subject to the administrator's right of possession in order to pay the debts of the estate, ownership is … vested in the heirs."); *Richardson v. Green*, 528 A.2d 429 (D.C. 1987) ("While the UPC retains the common law feature of title to real property passing to the heirs upon death, it creates a new concept designated as 'power over title' whereby the personal representative has the same control over the property as a fee simple owner.").

The Court is satisfied that, had Norma's estate received the proceeds from her promissory note in the ordinary course of the Probate Proceeding before they were distributed to the devisees, Section 45-3-803(C) would bar the Trustee's state law fraudulent transfer claims. If the funds had been paid to Ilah in her capacity as Personal Representative, the Trustee could have asserted a claim against Norma's estate to recover the funds. *See, e.g., In re Pearlman*, 2012 WL 2370389 (Bankr.M.D.Fla.2012) (trustee was barred from recapturing Ponzi-scheme proceeds paid to defendants' probate estate because she failed to file her fraudulent transfer claims within the one-year statute of limitations period as required by California probate law).[11] In that case, Section 45-3-803(C), by its terms, would have protected not only the estate but also Ilah, Linda, and David in their capacities as devisees.[12]

The more difficult issue is whether - in light of the fact that VCR transferred the proceeds of the note directly to the devisees - the Trustee has a claim against the estate such that Section 45-3-803(C) applies to her assertion of the claim against the devisees. Under New Mexico law, Ilah, as the Personal Pepresentative of Norma's estate, maintained possession and control of the promissory note at time the note proceeds were paid to the devisees. *See* supra, note 9.[13] Ilah, as Personal Representative, directed VCR to pay the devisees in satisfaction of VCR's liability to Norma's estate. Under these facts, the Trustee may very well have been capable of asserting her fraudulent transfer claims against Norma's estate, in which case such claims would be barred against both the estate and the devisees under Section 45-3-803(C). However, because the UPC contains a separate nonclaim provision that protects distributees, the Court need not reach this

---

[11] *See also In re Terry Mfg. Co., Inc.,* 2007 WL 274319, *9 (Bankr.M.D.Ala.2007) (Missouri's nonclaim statute applied to trustee's fraudulent transfer claims where the trustee sought to avoid dividend payments transferred to the deceased shareholder's estate).
[12] A "devisee" simply "means a person designated in a will to receive a devise." *See* N.M.S.A. 1978 § 45-1-201(11). Ilah, Linda, and David were all designated in Norma's Will to receive her property.
[13] The Court is making a reasonable inference from the undisputed facts that the Personal Representative did not transfer or otherwise distribute Norma's promissory note to Ilah, Linda, or David.

-13-

issue. As discussed below, even if the Trustee's state law fraudulent transfer claims are not barred under Section 45-3-803(C), she is prohibited from pursuing such claims under N.M.S.A. 1978 § 45-3-1006.

### C. Section 45-3-1006: Claims Against Distributees

As with claims against the estate, the UPC limits the time within which a claimant may commence an action against a distributee. Section 45-3-1006 provides:

> Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or unless otherwise barred, the claim of a claimant to recover from a distributee who is liable to pay the claim and the right of an heir or devisee or of a successor personal representative acting in their behalf to recover property improperly distributed or its value from any distributee is forever barred at the later of three years after the decedent's death or one year after the time of its distribution, but all claims of creditors of the decedent are barred one year after the decedent's death. This section does not bar an action to recover property or value received as the result of fraud.

N.M.S.A.1978 § 45-3-1006.

As discussed above, the Trustee contends that the UPC does not apply to her state law fraudulent transfer claims. By its terms, Section 45-3-1006 only applies to proceedings against distributees. N.M.S.A. § 45-1-201(A)(11) defines a distributee as "a person who has received property of a decedent from the decedent's personal representative other than as a creditor or purchaser." Here, VCR transferred the proceeds of Norma's promissory note directly to the Defendants. However, such payments were made: (1) during the pendency of the Probate Proceeding; (2) at the direction of the Personal Representative of Norma's estate; and (3) in satisfaction of VCR's liability to Norma's estate. Based on these facts, and in light of UPC's directive that it be liberally construed to promote its underlying purposes and policies,[14] the Court is persuaded that the note payments from VCR constituted payments from the Personal

---

[14] *See generally* N.M.S.A. 1978 § 45-1-102. Such policies include achieving a timely and final resolution of a decedent's estate. *Id.*

-14-

Representative in distribution under the Will. Such payments serve as "conclusive evidence that the distributee has succeeded to the interest of the estate in the distributed assets, as against all interested persons." N.M.S.A. 1978 § 45-3-908. The Trustee's state law fraudulent transfer claims therefore fall within the purview of Section 45-3-1006.

The Trustee also argues that her claims are not time-barred by Section 45-3-1006 because the transfers were received as a result of VCR's fraud. There is little case law interpreting the fraud exception contained in Section 45-3-1006. Based on the cases examining similar probate statutes in other jurisdictions, however, it is clear that Section 45-3-1006 is directed at fraud that is perpetrated in connection with probate proceedings. For example, *In re Estate of Goldstein,* 2006 WL 1737617, *2 (Wis.App. 2006) held that, in the context of Wisconsin's version of Section 45-3-1006, "fraud may consist of a suppression or misrepresentation of facts, the offering for probate of the will of a known incompetent, or misrepresentations to interested persons to induce them not to contest the will…."[15] There is no evidence that Norma or the Defendants committed fraud in connection with the Probate Proceeding. The Court is therefore not persuaded that fraud exception in Section 45-3-1006 applies to the Defendants receipt of the proceeds.

Having determined that Section 45-3-1006 applies to the Trustee's state law fraudulent transfer claims arising from Norma's investment in VCR, the Court concludes that such claims are time-barred under that section. In order to pursue a timely claim against any distributees of Norma's estate, the Trustee would have had to assert her claims on or before June 9, 2007. Because the limitations period expired before the Petition Date, the Defendants are entitled to

---

[15] *See also Steinberg v. Raymond,* 2001 WL 987033, *3 (Mich.App. 2001) (analyzing the fraud exception to distributee liability where the defendant was accused of taking a larger portion of decedent's estate than he was entitled); *In re Mannes,* 2011 WL 5008577, *4 (Mich.App. 2011) (applying Michigan's version of Section 45-3-1006 where the decedent's estranged wife failed to submit certain testamentary documents to the probate court).

-15-

judgment in their favor with respect to the Trustee's claims arising from Norma's investments in VCR.

## CONCLUSION

Based on the foregoing, the Defendants' Motion for Summary Judgment will be granted. The Trustee's claims against David (Counts 3, 6, 9, 12, 15, and 18) will be dismissed entirely. Additionally, the Trustee's claims against Ilah, William Campbell, as Personal Representative of the Estate of Linda Campbell, and John Doe, as Personal Representative of the Estate of Linda Campbell estate, will be disallowed to the extent such claims seek to recover payments arising from Norma's investment in VCR. The Trustee may not recover any damages under Counts 7, 8, 10, 11, 13, 14, 16, 17, and 19 of the Complaint based on VCR's transfers arising from Norma's investment in VCR. The Court will enter a separate judgment and order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 10, 2013

COPY TO:

James Askew & Edward Mazel
Askew & Mazel, LLC
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

John R. Cooney
500 Fourth Street NW, Ste. 1000
Albuquerque, NM 87102

Spencer Lewis Edelman

Modrall Sperling Roehl, Harris & Sisk PA
PO Box 2168
Albuquerque, NM 87103-2168